■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. HERMAN GONZALES, Also Known as JULIO RODRIGUEZ, Appellant, v STEPHEN DALSHEIM et al.,

Respondents.—Appeal from a judgment of the Supreme Court at Special Term, entered January 2, 1980 in Clinton County, which dismissed a petition for a writ of habeas corpus. As an inmate at Clinton Correctional Facility, the relator in this proceeding demands his immediate release on parole because his parole revocation hearings were allegedly not timely held, and the basic underlying facts are as follows. Relator was sentenced in New York in December of 1973 to an indeterminate term on imprisonment of zero to eight years upon his conviction for assault in the first degree, and he was later paroled from New York to New Jersey on December 23, 1976, after the latter State had issued a parole violation warrant against him. His New Jersey parole was then revoked, and he remained in a New Jersey youth correctional facility until he was paroled in April of 1977. Thereafter, the New Jersey Parole Board assumed the duties of monitoring and supervising relator's New York parole until May of 1978 when relator was arrested by New Jersey authorities and taken into custody on various charges. As a result, relator was convicted of statutory rape, desertion and nonsupport and sentenced to State prison, and with these circumstances prevailing on December 15, 1978, a New York parole violation warrant was executed against him. Subsequently, when his New Jersey imprisonment ended on March 1, 1979, he was transferred forthwith to New York and a preliminary revocation hearing on his parole was held within 15 days thereafter on March 16, 1979. A finding that there was probable cause to believe that he had violated his parole resulted, and consequently a final revocation hearing was held on May 28, 1979, after which relator's parole was revoked because of his rape conviction. The instant writ of habeas corpus challenging the revocation of his parole was thereupon filed by relator on August 30, 1979, and the petition was transferred from Westchester County Supreme Court to Clinton County Supreme Court. Concluding that the revocation hearings were timely, Special Term then proceeded to dismiss the petition, and the present appeal has now ensued. We hold that the judgment of Special Term should be affirmed. Although section 259-i (subd 3, par [c], cl [i]) of the Executive Law requires that a preliminary revocation hearing must be conducted within 15 days of the execution of a parole violation warrant and section 259-i (subd 3, par [f], cl [i]) of the Executive Law requires that a final revocation hearing must be conducted within 90 days of the preliminary hearing or a waiver thereof by the parolee, it is well settled that a parolee may invoke his right to prompt hearings only when he is "subject to the convenience and practical control of the Parole Board" (People ex rel. Walsh v Vincent, 40 NY2d 1049, 1050; People ex rel. Spinks v Dillon, 68 AD2d 368). Likewise, it is specifically provided by statute that the time limit for a revocation hearing may be extended when an alleged parole violator by his own actions precludes the prompt conduct of such proceedings (Executive Law, § 259-i, subd 3, par [f], cl [i]). In this instance, from the time the parole violation warrant was executed on December 15, 1978 until March 1, 1979 when he was transferred to New York, relator was imprisoned in New Jersey as a result of his rape, desertion and nonsupport convictions. Such being the case, not only was he not not "subject to the convenience and practical control of the Parole Board" during this period, but also it was his own criminal activity in New Jersey which caused his predicament and delayed the conduct of the revocation hearings. That being so and both the preliminary and final revocation hearings having been promptly held upon relator's return to New York, the petition for a writ of habeas corpus was properly dismissed. In so ruling, we would note in conclusion that the interstate compact for

out-of-State parolee supervision (Executive Law, § 259-m *et seq.)* does not mandate a contrary result in the present situation. A reading of that compact (see, particularly, Executive Law, § 259-m subd 1, par [3]; § 259-n, subd 1, par [a]) reveals that it was primarily intended to facilitate the apprehension and incarceration of out-of-State parolees and probationers who at the time are not in custody so that the sending State, in this case New York, can more readily control and deal with said parolees and probationers in a manner appropriate under the prevailing circumstances. Reliance upon the compact was not necessary here, however, because relator was already imprisoned upon his New Jersey convictions when the New York parole violation warrant was executed on December 15, 1978, and relator plainly was not prejudiced by the short delay of his revocation hearings until after his discharge from State prison in New Jersey on March 1, 1979. Judgment affirmed. Greenblott, Kane and Main, JJ., concur.

Mahoney, P. J., and Mikoll, J., dissent and vote to reverse in the following memorandum by Mahoney, P. J. Mahoney, P. J. (dissenting). As noted by the majority, the Executive Law mandates that a preliminary revocation hearing be held within 15 days of the execution of a parole violation warrant (§ 259-i, subd 3, par [c], cl [i]) and a final revocation hearing be held within 90 days of the preliminary hearing (§ 259-i, subd 3, par [f], cl [i]). In the instant case, while it is true that the relator's final revocation hearing on May 28, 1979 was conducted within 90 days of the preliminary revocation hearing held on March 16, 1979, over three months passed following the execution of the parole violation warrant on December 15, 1978 before the relator received his preliminary hearing. While recognizing that the preliminary revocation hearing was not timely conducted pursuant to section 259-i of the Executive Law, the majority advances three distinct theories for excusing the delay. First, it is submitted that since the relator was incarcerated in a New Jersey prison between December 15, 1978 and March 1, 1979, at which time he was transferred to New York, he was not subject to the requisite "convenience and practical control" of the New York Parole Board necessary to trigger his right to prompt hearings. We disagree. A review of the interstate compact for out-of-State parole supervision (Executive Law, § 259-m *et seq.)* clearly indicates that there was no need to wait until the relator was returned to New York before affording him a preliminary hearing since the New York Parole Board had the authority to order New Jersey officials to conduct a preliminary hearing while the relator was incarcerated in New Jersey (Executive Law, § 259-o, subd 3). The majority's position that New York does not have practical control over its parolees when they are being supervised by another State's parole authorities is contrary to both the letter and spirit of the interstate compact. Section 259-o of the Executive Law specifically provides for the holding of preliminary revocation hearings outside of the State when a New York parolee is being supervised by parole officials in another State. Furthermore, a parolee being supervised by another State, who is incarcerated or reincarcerated in that State, possesses the same rights as he would have had if incarcerated or reincarcerated in New York (Executive Law, § 259-n, subd 1, par [e]), and the judicial and administrative officers of one State are deemed to be the agents of the other (Executive Law, § 259-n, subd 1, par [e]). We therefore conclude that since both New York and New Jersey are signatories to the interstate compact, the relator was subject to the "convenience and practical control" of the New York Parole Board while he was incarcerated in a New Jersey facility. The majority also finds that the relator has, by virtue of his conduct, waived any right he may have had to prompt revocation

hearings. The basis for this conclusion appears to be the fact that it was the relator's criminal activity in New Jersey which caused his incarceration in that State and prevented him from being in New York immediately following the execution of the parole violation warrant. Although this argument is dependent upon the earlier contention that the relator was beyond the control of New York authorities while imprisoned in New Jersey, and must fail once it is concluded that such control was in fact present, it misperceives the type of conduct by which a parolee may waive his right to prompt revocation hearings. The two statutory provisions dealing with waiver (Executive Law § 259-i, subd 3, par [f], cl [i]; § 259-o, subds 2, 3) were meant to apply to parolees, against whom violation warrants had been executed, who managed to elude authorities and thus make impossible the holding of hearings within the statutorily prescribed time limits,* in addition to those who knowingly and voluntarily waived their rights to prompt hearings. Neither situation is present in the instant case. Since the relator did not attempt to voluntarily relinquish his right to a preliminary revocation hearing within 15 days of the execution of the parole violation warrant and his conduct during that period (he was incarcerated in New Jersey) did not in any manner impede the holding of a preliminary hearing, it cannot be said that he "waived" this right. Finally, the majority states that the relator was not prejudiced by the short delay in his revocation hearings until after his discharge from State prison in New Jersey on March 1, 1979. There is absolutely no authority to support this attempt to place the burden upon a parolee to show how he has been prejudiced by any delay. Parolees imprisoned on unrelated charges as still entitled to prompt revocation hearings *(Matter of Beattie v New York State Bd. of Parole,* 39 NY2d 445), and delays in conducting parole revocation hearings beyond the statutory time limits have been held to be unreasonable per se *(People ex rel. Levy v Dalsheim,* 66 AD2d 827; see *People ex rel. Johnson v New York State Bd. of Parole,* 71 AD2d 595). Where, as here, the relator was not afforded a timely preliminary revocation hearing, the only appropriate remedy is vacatur of the parole revocation warrant and reinstatement of the relator to parole (see *People ex rel. Johnson v New York State Bd. of Parole, supra; People ex rel. Levy v Dalsheim, supra).* Accordingly, we would reverse the judgment, grant the petition, and reinstate relator to the status of parolee.

---

* This is, in reality, a partial codification of the "convenience and practical control" test set forth in *People ex rel. Walsh v Vincent* (40 NY2d 1049).